CLIFFORD L. FARRA       )
                             )
v.                           )          NO. 2:06-CV-273
                             )
HOWARD CARLTON, Warden   )

## MEMORANDUM OPINION

## I. **Introduction**

        Clifford L. Farra, a state prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to his 2000 Sullivan County, Tennessee drug convictions. [Doc. 6]. Respondent has filed a motion for summary judgment, which is supported by a brief and copies of the state court record. [Doc 12, Attach. # 1; Doc. 13, Addenda 1-23]. Petitioner opposes the motion and has offered his own motion for partial summary judgment and a supporting brief. [Docs. 15-17].

        Respondent argues, in his motion, that petitioner is not entitled to relief from the state court decisions rejecting certain claims on the merits, given the deferential standards of review required in 28 U.S.C. § 2254, and that other claims have been inadequately pled, waived, or not exhausted in the state courts.[1] The Court agrees with respondent and, for the following reasons, will **GRANT** respondent's motion, **DENY** petitioner's, and **DISMISS** the petition.

---

[1] By asserting that petitioner has waived or failed to exhaust certain of his claims, respondent is invoking the procedural default doctrine. That doctrine will be discussed when those particular claims are addressed.

## II. **Procedural History**

In August of 2000, petitioner was convicted of three cocaine-related offenses (sale, possession, and conspiracy to sell or deliver a quantity of more than 300 grams of cocaine), and two marijuana-related convictions (conspiracy to sell more than ten pounds of marijuana and possession of more than ten pounds of marijuana, merged with sale of more than ten pounds of marijuana). For these offenses, he was sentenced to an effective sentence of forty-four (44) years imprisonment as a Range I, standard offender. On direct appeal, petitioner's conviction for the marijuana conspiracy was reversed and vacated, but his judgment was affirmed in all other respects. *State v. Farra*, No. E2001-02235-CCA-R3-CD, 2003 WL 22908104 (Tenn. Crim. App. Dec. 10, 2003), *perm. app. denied* (Tenn. 2004). His subsequent petition for post-conviction relief was denied. *Farra v. State*, No. E2005-00963-CCA-R3-PC, 2006 WL 859202 (Tenn. Crim. App. April 3, 2006), *perm. app. denied* (Tenn. 2006).

He now brings this instant habeas corpus petition, seeking release from his alleged unlawful confinement.

## III. **Factual Background**

Following an undercover operation, in which Jonathan Hamlin was a participant,[2] officers of the Second Judicial District Drug Task Force searched petitioner's

---

[2] After learning that Jonathan Hamlin and one Walter Eugene Mayo were dealing drugs, members of the Second Judicial District Drug Task Force searched Mayo's residence and found a black bag containing packets of cocaine, a receipt, and paperwork bearing petitioner's name. Hamblin, faced with criminal charges, agreed to participate in an undercover operation to gather evidence against petitioner, a long-haul truck driver. Subsequently, he engaged petitioner in telephone conversations, during which they discussed a "deal."[The conversations were tape-recorded and later played for the jury.]

Thereafter, on December 29, 1999, Hamblin went to petitioner's home with $20,000 in marked bills and emerged 1 - 1½ hours later along with petitioner, both bearing parcels wrapped in Christmas paper. They set the three packages in Hamlin's car and he drove to a motel, followed by task force officers. When the packages were opened, one box contained marijuana and another held cocaine. The markings on the boxes reflected that their original contents were a new electric keyboard, a pink

2

home, pursuant to a warrant. Upon entering, they smelled a strong marijuana odor. When they moved to the master bathroom, they discovered plastic tubs containing marijuana residue, lids to those tubs, and, resting on the counter, a large set of scales with marijuana in the scales. In the bathtub were some twenty plastic bags, eighteen of which had marijuana residue in them.

Also found were cigarette rolling papers; a rolling machine; old magazines on marijuana horticulture; a cache of ninety-two firearms, including an M16 rifle; an electric keyboard; a pink mechanical pig—its relevance is explained below; and a key and a rental contract for a storage unit. Stored in a ceramic chicken on top of the refrigerator in the kitchen was $20,000 in marked cash, which Hamblin had used to satisfy a prior drug debt. However, the search revealed no documents or records, financial or otherwise, to suggest that petitioner was dealing drugs.

After finding a compartment underneath the sleeper-bunk area of petitioner's truck, sufficiently capacious to hold the plastic containers from the master bathroom, officers secured another search warrant and used the key they had located in the house to enter a storage unit, discovering therein some motor scooters and a box containing $60,000 in cash. As a result of the searches, petitioner was charged with several marijuana and cocaine offenses.

Later, at the trial, Jonathan Hamblin testified for the prosecution. Hamblin stated that petitioner had fifty pounds of marijuana and a "kilo" of cocaine for him to distribute but that, before petitioner would give him the drugs, Hamblin had to pay $20,000 he owed petitioner for a previous shipment of marijuana. Hamblin stated that he carried to

mechanical pig, and an electric heater.

3

petitioner's house a cooler containing the $20,000 furnished to him by the task force and that petitioner retrieved the cash from the cooler, which Hamblin had left inside the back door, and gave the money to his wife. Hamblin also stated that lying on the bed in the master bedroom were wrapped packages, which he took to the motel where he met the officers.

Hamblin further testified that, on numerous occasions from June 1, 1999 through December 29, 1999 [the conspiracy time-frame], he received marijuana and cocaine from petitioner and that, on one occasion, he saw as much as 200 pounds of marijuana at petitioner's home. Hamblin related that he helped the defendant break up bricks of marijuana and repackage it for distribution; that, to a smaller extent, he helped him repackage cocaine; and that, once, he helped petitioner carry drugs from his truck into his home. He also related that, during the relevant period of time, he sold approximately 50 to 70 pounds of marijuana which he had gotten from petitioner and that he paid him between $50,000 and $60,000 for sales of cocaine and marijuana.

Additionally, Hamlin stated that petitioner had mentioned a "scooter" business as a means of laundering money; that he had used drug money to buy cars, firearms, and coins, and to pay his house mortgage; and that petitioner had stored the drugs at Mayo's residence. He also identified the black bag found in Mayo's home as belonging to petitioner. The bag had contained, *inter alia*, cocaine.

Hamblin admitted that he had an agreement with the prosecution to dispose of his pending drug charges with an effective 20-year sentence, to be served at 30 percent and that, when first approached by the officers about his role in the drug trade, he told the officers several untruthful stories, including one elaborate lie about "Mafia" involvement.

A chemical analyst testified that the packages and plastic bags submitted by the task force contained a total of 51.9 pounds of marijuana and that some packages,

collectively, contained 862.6 grams of cocaine.

Petitioner called several defense witnesses, including his neighbors, who testified that no suspicious activities, such as streams of callers or late-night visitors, had occurred at his house. Another witness, a former trucker, stated that he had dispatched petitioner on hauling trips; that petitioner had hauled for K-Mart and Wal-Mart, often driving to the West Coast on Interstate 10, where drug-sniffing dogs were routinely stationed; that truckers carried large amounts of cash for repairs (up to $8,000); that, 95 percent of the time, trips were "timed," meaning they had preset times for delivery; and that there had been no complaints about petitioner being late on his runs. The witness acknowledged, however, that, while he knew about petitioner's routes and methods in 1997 and in early 1998, that familiarity did not extend to 1999. Another witness testified that petitioner bought or leased trucking equipment from him from 1994 to 1998; that petitioner had paid his invoices by check; that he had satisfied the debts owing on the truck and equipment, and that he had leased, in August 1999, a motor home for a $1,372 monthly fee.

Petitioner also called family members as witnesses. His adult daughter testified that her father was a longtime gun collector and that, four days prior to the Holiday, Hamlin, who was married, had left Christmas packages at the Farra house for his girlfriend. Petitioner's brother related that Hamblin had suffered some financial problems and, afterwards, had lived in his home, but that the living arrangement terminated because of Hamblin's involvement in the drug-trade.

Petitioner too was a witness, testifying that he had driven a truck for 32 years and that his truck routes ran between the South and the West Coast, that, en route, he would encounter 30 or 40 checkpoints where drug-sniffing dogs were employed, that he had not been to Mexico since he was sixteen years old, that he had known Hamblin for years but had

not seen him for some time until he began living at his brother's house, that Hamlin asked him to take some drugs to California, that he refused, and that the extent of Hamblin's business with him was Hamblin's purchase of his boat, which the two worked on several times and for which Hamblin never finished paying, and that Hamlin had also worked on his computer, setting it up, fixing problems, and installing software.

Petitioner related that he had met with Hamblin on December 21, 1999, after Hamblin's house had been searched, that he agreed to loan him $4,500, and that Hamblin asked petitioner if he could leave some Christmas packages at his house. Petitioner explained that the tape-recorded calls had been the result of Hamlin's request that petitioner speak with him on the phone and "act like his boss"— a ruse intended, supposedly, to mislead Hamlin's Mafia associates. Petitioner further explained that, after the second call, he became suspicious about the Christmas presents, opened the end of one, but re-sealed it when he felt bricks inside and smelled marijuana. As for the December 29th delivery of $20,000, petitioner testified that it included repayment for the $4,500 loan and that the rest was money which Hamlin wanted petitioner to hold for him.

Petitioner denied that the black bag found in Mayo's residence was his and that a note discovered in the bag contained his handwriting. Also, according to petitioner, he had found the plastic boxes in a field behind a Pilot truck stop, had used the scales in the house to weigh silver and reloads for shotgun cartridges, had been collecting guns since he was a teenager, and had purchased the cigarette roller eighteen years earlier for his personal use. Petitioner stated that the officers had discovered no Christmas wrapping paper in his home which matched the wrapping on Hamblin's parcels, that Hamblin had spent time alone in petitioner's house, that he [petitioner] did not own a heater matching one of the boxes in the packages, and that probably he had thrown away the keyboard box, which, he imagined,

6

could have been retrieved by anyone.

IV. **Discussion**

Petitioner's habeas corpus application contains eleven grounds for relief. Those grounds are: 1) insufficient evidence, 2) jury tampering, 3) improper jury instructions, 4) evidentiary errors on the part of the trial court, 5) error by the state appellate court on direct review, 6) illegal search, 7) violation of a rule involving witness sequestration, 8) unconstitutional selection and composition of the grand jury, 9) ineffective assistance of counsel, 10) a violation of the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), and 11) a violation of petitioner's jury-trial right, as detailed in *Blakely v. Washington*, 542 U.S. 296 (2004). These claims have been organized into three categories for purposes of discussion—adjudicated claims, procedurally defaulted claims, and insufficiently-pled/ non-cognizable claims.

A. **Adjudicated Claims**

Under the review standards set forth in 28 U.S.C. § 2254(d), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the

"unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.*, at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 1. *Insufficient Evidence*

Petitioner challenges the sufficiency of the convicting evidence as to all six convictions, arguing that the proof was inadequate to show that he knowingly possessed and intended to sell the cocaine and marijuana, that he knowing sold those drugs, and, essentially, that evidence to support his conspiracy convictions was lacking.

### a. Applicable Law

The standard which controls this type of claim is found in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). There, the Supreme Court held that sufficient evidence supports a conviction if, after viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*, at 324. It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986). To meet this burden, petitioner must show that the state court decision on this issue was the result of an unreasonable

determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(2).

  b. <u>Analysis</u>

   When petitioner's insufficient-evidence claim was offered on direct review, the Tennessee Court of Criminal Appeals examined the evidence against petitioner and did so in the context of the elements of each offense. This Court will follow suit.

    i) *The possession-for-resale convictions:* Under state law, the prosecution must prove two elements for possession for resale of 1) more than 300 grams of cocaine and 2) of more than 10 pounds of marijuana: 1) that petitioner possessed cocaine/marijuana and 2) that he intended to sell the respective drugs. *State v. Farra*, 2003 WL 22908104, at *6 (citing to Tenn. Code Ann. §39-12-103(a)).

   In examining this claim, the state court initially pointed to the evidence adduced at trial. That proof showed that, immediately prior to his arrest, petitioner was in possession of and had control over 862.6 grams of cocaine and more than 50 pounds of marijuana; that shortly before his arrest, petitioner discussed the details of the imminent sale during two telephone calls monitored by the task force officers; and that, during the search of petitioner's home, the officers discovered marijuana residue in large plastic tubs, twenty ziplock bags, some containing marijuana, sets of scales, with marijuana in one of the scales, and drug paraphernalia. The state appellate court then considered this evidence in relation to the elements of the offenses, concluding that it was constitutionally sufficient to support the jury's verdict of guilt on the two possession offenses.

   Petitioner first argument is that the state appellate court incorrectly determined that the plastic bags discovered in the bathtub contained marijuana, when the proof showed that only marijuana <u>residue</u> was found in the bags. Petitioner has not developed his

9

contention further, instead citing to *Mitchell v. Mason*, 325 F.3d 732, 747 (6th Cir. 2003), seemingly, for the purpose of explaining his position. *Mitchell* cannot serve that purpose, however, given that the cited section of that case involves a claim of ineffective assistance of counsel, whereas the claim at issue here is the sufficiency of the evidence. At any rate, petitioner does not assert that the state court's finding as to the *quantity* of marijuana involved in the offenses is an incorrect finding of fact. What was found in the plastic bags is still marijuana whether labeled as residue or some greater amount. Petitioner has not demonstrated that the state court's selection of the word "marijuana," rather than the more precise term "marijuana residue," in describing the contents in the plastic bags had any bearing on the calculation of drug amount. And he has not adduced any clear and convincing evidence to show that the finding that the ziplock bags contained marijuana was incorrect.

The Court of Criminal Appeals conducted its review under Rule 13(e) of the Tennessee Rules of Appellate Procedure, which embodies the standard for evidentiary sufficiency established in *Jackson v. Virginia*. *See State v. Dodd*, 1995 WL 686111, at * 2 (Tenn. Crim. App. Nov. 15, 1995) (citing *State v. Matthews*, 805 S.W.2d 776, 778 (Tenn. Crim. App. 1990)). The test for a claim of insufficient evidence is that enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979), *see Gall v. Parker,* 231 F.3rd 265, 287-88 (6th Cir. 2000), which holds that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319

Because the state court applied the *Jackson* principle, the relevant Supreme Court precedent, to adjudicate the insufficient-evidence claims, this Court can only grant relief if petitioner demonstrates that the application itself was unreasonable or that the decision was based on an unreasonable factual determination. Given the deferential review

lens of § 2254(d) and the factual scenario which emerged at the trial, i.e., the discovery of drugs in the parcels and the ziplock bags, drug residue in the tubs, scales with marijuana in the tray of one, and drug paraphernalia, along with the taped telephone conversations, in which petitioner and Hamlin made arrangements for the drug sale (including, as the state court noted, the price and the amount of drugs), the state court decision was neither of these things.

ii) *The sale convictions.* In Tennessee, a conviction for a sale of cocaine or a sale of marijuana requires proof that petitioner knowingly sold the controlled substance. *State v. Farra*, 2003 WL 22908104, at *6 (citing to Tenn. Code Ann. §39-17-417 (Supp. 2002)). A sale is defined as 1) a bargained-for offer and acceptance, and 2) an actual or constructive transfer or delivery of the items. *Id.* According to the Court of Criminal Appeals' iteration of the proof, Hamlin and petitioner twice discussed the terms and conditions of a sale, including quality and price; Hamlin took $20,000 to petitioner's home to transact the deal; and, after some ninety minutes had passed, Hamlin exited with petitioner, both of them carrying parcels, which later were determined to contain drugs. Moreover, petitioner helped place the parcels in Hamlin's car and he also kept the money. This proof, the state court concluded, satisfied both prongs of the definition of a sale.

Concluding that petitioner's acceptance of the marked bills in exchange for drugs and his actual delivery of the drugs were sufficient to sustain the two sale convictions, the state court declined to give any relief.[3] This Court likewise must decline to grant relief, unless the state court's application of *Jackson* to these facts was unreasonable or its resulting

---

[3] The cocaine sale conviction was merged with the cocaine possession-for-resale conviction and the marijuana sale conviction was merged with the marijuana possession-for-resale conviction. *State v. Farra*, 2003 WL 22908104, at *1.

decision was based on an unreasonable factual determination. Petitioner has failed to show either of these things and, thus, he cannot be granted the writ under § 2254(d).

iii) *The conspiracy convictions.* At the time of petitioner's conviction, a conspiracy offense required proof that two or more people, each of whom had the culpable mental state required for the offense which is the object of the conspiracy and each of whom was acting for the purpose of promoting or facilitating the commission of an offense, agreed that one or more of them would engage in conduct constituting the offense. *State v. Farra*, 2003 WL 22908104, at *7 (citing to Tenn. Code Ann. §39-12-103(a) (1997)). There need be no formal agreement, in writing or otherwise, to establish a conspiratorial relationship. All that is required is that there be "a mutual implied understanding" between the parties. Circumstantial evidence and the conduct of the participants, while undertaking the illegal activity, may serve to prove the conspiracy. So long as there is an attunement of design, it matters not whether there is coequal participation in every minuscule detail of the offense.

Here, petitioner claims that because Hamlin was an informant, he could not, at the same time, be a true conspirator. In state court, petitioner's primary complaint with regard to the conspiracy convictions was that they were obtained on the uncorroborated testimony of an accomplice.[4] The state court disagreed, but that disagreement is not a suitable habeas corpus issue. *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985) ("The Constitution says nothing about accomplice testimony"); *see also Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (finding that there is no constitutional requirement that the testimony of an accomplice be corroborated) (listing cases). A matter of state law, as is this,

---

[4] To the extent that the claim raised here is not the same one raised in state court, it has been procedurally defaulted.

12

is not cognizable in habeas corpus, unless it rises to the level of a due process violation. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court sees no such a violation here.

However, the state court's determination, as a federal constitutional matter, that the proof was sufficient to sustain the conspiracy convictions is fully reviewable here. As to this claim, the state court once again pointed to the evidence. Included in this proof were the two tape-recorded, drug-dealing conversations between Hamlin and petitioner, suggesting, according to the state court, that both were familiar with the subject matter; the circumstances surrounding the December 29, 1999 drug deal; Hamlin's testimony that petitioner transported drugs in his truck; the plastic tubs with marijuana residue; and the storage compartment in the truck which was large enough to accommodate the tubs.

After listing the evidence, the state court granted petitioner partial relief by vacating his conviction for the marijuana conspiracy. The state court chose this course of action based on state law which provides that a person who conspires to commit a number of offenses is only guilty of one conspiracy, so long as such multiple offenses are the object of the same agreement or continuous conspiratorial relationship. Hence, in view of the state law, petitioner could only be guilty of one conspiracy, to wit, the cocaine conspiracy.

As to that conspiracy, the Court of Criminal Appeals ruled that the matter hinged on the jury's credibility determinations and that those findings were not to be disturbed. Insofar as the Court can discern, this issue primarily involves two competing versions of the circumstances surrounding the drug transaction and the jury's obvious acceptance of the version offered by Hamblin, as bolstered by the officers' testimony and the taped conversations. A jury is free to choose which version of a contested issue is true. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly

13

erroneous.").

In view of all the proof in the record, and because this issue, distilled to its essence, is one of credibility, the state court's resolution of this claim was not an unreasonable application of the *Jackson* standard nor based on an unreasonable determination of the facts. Since petitioner's claim of insufficiency of the evidence does not pass either of § 2254(d)'s tests, respondent is entitled to summary judgment on this claim.

2. *Jury Tampering*

In this claim, petitioner asserts that he was denied a fair trial because the jury which convicted him included four jurors who had previously reported to court personnel that petitioner came to the hotel where they were sequestered and took pictures of some of them and because the wife of one of those jurors testified that someone called her home, asking about her husband's location. Petitioner contends that two of the jurors were troubled by the tampering and expressed grave concern for their families. Based on these occurrences and on testimony by the jurors involved, petitioner asserts his jury was not composed of impartial jurors, in accordance with constitutional guarantees. Petitioner also seeks summary judgment as to this issue, claiming that, once jury tampering has been established, prejudice is presumed and the prosecution has the burden to rebut that presumption at an evidentiary hearing. According to petitioner, the trial court did not hew to these procedures.

In reviewing this claim on appeal, the Court of Criminal Appeals recited the facts surrounding this issue:

> "[D]uring trial two jurors believed they saw [petitioner] take their picture at the hotel where the jury was sequestered. There were also two officers present during the incident in question. Officer Delp testified to seeing a car being driven by a female approach her location. She did not see a camera, but a juror immediately told her that he noticed a flash. Upon hearing this information, Officer Delp contacted her superior and unhesitatingly secured the jurors in their rooms.

14

Officers immediately divulged this information to the court, and the court held an evidentiary hearing. During the evidentiary hearing, it came to light that [petitioner's] mother and stepfather owned a car similar to the car seen at the jurors' hotel. Both jurors confirmed to the judge that although they wholeheartedly believed [petitioner] took their photograph, evidence presented at trial was the sole basis for their decision to convict. Upon conclusion of the hearing, the judge was convinced that [petitioner] had not been prejudiced.

*Farra v. State*, 2003 WL 22908104, at *12.

Although the state court ultimately rejected the claim as waived, respondent has not relied on this finding, arguing instead that the state court's rejection of the claim was not an unreasonable application of federal law or based on an unreasonable factual determination. The constitutional right to a jury trial necessarily embraces the right to a jury composed of impartial, indifferent jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Moreover, all evidence against a defendant must be offered from the witness stand in a public courtroom, "where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). Where there are extraneous influences on a juror, as is alleged here, the Supreme Court has required a hearing, "with all interested parties permitted to participate" in order "to determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." *Remmer v. United States*, 347 U.S. 227, 230 (1954). *See also Smith v. Phillips*, 455 U.S. 209, 215 (1982) (finding that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"). In the Sixth Circuit, *Smith* is viewed as reinterpreting *Remmer* "to shift the burden of showing prejudice to a defendant rather than placing a heavy burden on the government to show that an unauthorized contact was harmless." *United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993). *See also United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) (observing that courts should not presume that a contact was prejudicial) (citing *Walker*).

Granted, the state court did not cite to *Remmer* or to any other Supreme Court cases in resolving the issue. Nonetheless, this Court will defer to the state court decision so long as neither the reasoning or result of the state court decision contradicts the relevant legal principle. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). As observed, the trial court held a *Remmer* hearing, during which two officers, the jurors involved, petitioner, his mother, and his stepfather were questioned as to the picture-taking incident. The telephone call to the wife of one of those jurors, in which the caller asked, "Where's your husband at (sic)?", was also discussed. Based upon that testimony and the discussion, the trial court found no prejudice. [Addendum No. 13, T.Tr. at 1176-87, 1206-11, 1251-57].

As noted, the state appellate court found the claim waived, but it also declined to grant relief after noting that management of a jury falls within the traditionally broad purview of the trial court and that the lower court was in the best position to determine any perceived prejudice and to discern any repercussions during the trial.

The trial court followed the procedures *Remmer* requires when improper jury contact is alleged — it held a hearing to explore the circumstances, interested parties were heard, and it found that those events had not created actual juror bias. Petitioner has pointed to no relevant Supreme Court precedent, and this Court knows of none, showing that the resolution of the issue is contrary to, or an unreasonable application of, federal law, or based on an unreasonable factual determination. No relief will be afforded petitioner with respect to this claim either.

B. **Procedurally Defaulted Claims**

Under 28 U.S.C. § 2254(b) (1), a state prisoner's petition for a writ of habeas corpus will not be granted unless he has exhausted his available state court remedies. Exhaustion requires that a petitioner fairly present his federal claim first to the state courts,

in a procedural context where a merits review is likely. *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A petitioner who has failed in this regard and who is now barred by a state procedural rule from returning with his claim to those courts, has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and is deemed to have exhausted his state remedies, but to have done so by way of a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A petitioner who has actually presented his federal claim to the state courts, which have declined to address it due to his failure to meet a state procedural requirement, has committed a procedural default as well. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on appeal); *Reed v. Ross,* 468 U.S. 1 (1984) (same).

For all types of procedural default, federal review is foreclosed, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Coleman,* 501 U.S. at 732. A procedural default will also be overlooked where a petitioner can demonstrate that the failure to review his claim will result in a fundamental miscarriage of justice. *Id.*, at 757.

With these principles in mind, the Court turns to those claims which respondent contends have been procedurally defaulted.

1. *Jury Instructions*

Petitioner asserts that the trial court failed to instruct the jury as to a "buyer-seller" charge and on facilitation as a lesser-included offense of each offense alleged. Respondent argues that the state appellate court held that both alleged errors were waived. Respondent is correct. When these instructions were challenged on appeal, the Court of Criminal Appeals declined to review them, holding that they had been waived by petitioner's

17

failure to raise them at trial or in a motion for a new trial. *Farra*, 2003 WL 22908104, *9-*10.

When a state asserts that a petitioner's procedural default bars review of his federal claim, a court in the Sixth Circuit must employ a four factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether that rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *Id*.

The state's "waiver" rule, which bars claims not raised at the earliest opportunity in a proceeding where they could have been raised, was enforced against petitioner, and, according to the Sixth Circuit, it is an adequate and independent state-law ground which forecloses habeas review. *Hutchison v. Bell* 303 F.3d 720, 738 (6th Cir. 2002). The finding of waiver amounts to a procedural default, *see Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977), which can be overcome by a showing of cause and prejudice. No such a showing has been made and, thus, federal review of this claim is foreclosed by petitioner's procedural default.

### 3. *Violation of the Witness Sequestration Rule*

In this claim, petitioner contends that he was denied a fair trial, in that the prosecution and the trial court failed to invoke and observe the rule of witness sequestration. Respondent maintains that, despite a reference to the claim in the state appellate court's opinion on post-conviction review, the issue was not properly raised in the state court. This is so, he argues, because the state court observed that "the single issue presented" was

18

whether it was error on the part of the trial court to conduct an evidentiary hearing, absent a written answer by the State to the claims raised in the original post-conviction petition.

In petitioner's post-conviction appellate brief, under the heading "ISSUE PRESENTED FOR REVIEW," this is how he stated his claim for review: "Whether the Criminal Court committed reversible error by proceeding with a post-conviction hearing when the state had failed to answer the petitioners (sic) original petition, and the court had not filed an order setting an evidentiary hearing." [Addendum No. 22, Pet'r's Post-Conviction Appeal Brf. at 2]. No substantive claim was raised and no arguments were offered as to any individual claim. Certainly, there was nothing to indicate that petitioner was appealing the trial court's disposition of his witness sequestration claim. Though the state court briefly discussed the issue, it did so in the context of deciding the single claim offered for its consideration, i.e., whether petitioner had been afforded a full and fair evidentiary hearing, despite an answer by the state which addressed only the claims raised in the amended petition.

Exhaustion requires that a petitioner fairly present his federal claim to the state courts in a procedural context where a merits review is likely. *Castille v. Peoples,* 489 U.S. 346, 351 (1989). This did not happen here and, because no state remedies are left, petitioner has procedurally defaulted the claim. No cause and prejudice is alleged and federal review is not available for the claim.

Moreover, even if the issue were preserved for federal habeas corpus review, it still would be doomed. This is so because the claim does not raise an issue under the Constitution and, therefore, is not a cognizable habeas corpus claim. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (finding that federal habeas corpus relief does not lie for errors of state law that do not rise to the level of a constitutional violation.) Petitioner's "witness

19

sequestration" claim is based on state evidentiary law, and does not deprive petitioner of his federal rights. *See Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988) ("A refusal to exclude ('separate') witnesses until they testify is not a denial of due process"); *Mathis v. Wainright*, 351 F.2d 489 (5th Cir. 1965) ("[A] complaint that the trial court failed to invoke the rule of sequestration of witnesses does not raise a question that can be reached by federal habeas corpus, since such denial does not amount to a deprivation of [petitioner's] constitutional rights"). *But see Robinson v. State of Tennessee*, 340 F. Supp. 82, 85 (D. C. Tenn. 1972) (recognizing that barring the testimony of a witness who has remained in the courtroom in violation of the sequestration rule "could raise a constitutional issue"), *aff'd*, 474 F.2d 1273 (6th Cir.), *cert. den. sub nom*, *Bailey v. Tennessee*, 414 U.S. 848 (1973).

### 3. *Unconstitutional Selection and Composition of the Grand Jury*

Petitioner maintains, in this claim, that the grand jury which indicted him was unconstitutionally selected and empaneled because African Americans were systematically excluded from the panel. He further suggests that his attorney was ineffective for failing to make this argument. Again, respondent asserts that the issue was not properly raised in the state courts and, thus, has been waived.

As it did with the previous issue, the appellate court touched on this issue, pointing to the trial court's finding that petitioner had failed to present "even a scintilla of proof" to support the claim, which was underscored by petitioner's admission that he "did not know how the grand jurors were selected and otherwise had no proof of systematic exclusion by race." But again, the ultimate conclusion was that the evidentiary hearing was full and fair, even absent the State's written answer to the issues contained in the original petition. The single issue in petitioner's post-conviction brief is not this one. Petitioner's procedural default and his failure to present anything resembling cause and prejudice now

bars federal review of his claim.

4. _Ineffective Assistance of Counsel_

In this claim, petitioner argues that he had ineffective assistance due to his attorney's failure to contest the warrant to search the storage unit, wherein was discovered and seized $60,000 in cash, and his failure to call a witness to rebut the state's argument that petitioner earned his living by selling drugs. Petitioner insists that his lawyer should have established that he had rented more than one unit. Once more, respondent argues that this claim was not properly presented to the state appellate court and for this reason was waived.

As in the previous two claims, this claim was not specified as a ground for relief in petitioner's post-conviction brief, but the appellate court recounted that neither petitioner nor counsel could recall whether petitioner had mentioned that he had rented more than one unit and that counsel had testified that he had never represented a client when the evidence of guilt was more overwhelming. The attorney also stated that petitioner's accountant had conveyed to him that his testimony would hurt petitioner more than it would help him. According to the appellate court, the lower court, accrediting counsel's testimony, had found no ineffective assistance with respect to either of the two alleged attorney shortcomings.

Nevertheless, it remains that the eventual decision of the Court of Criminal Appeals was that petitioner had a full and fair evidentiary hearing, not that his attorney had or had not given him ineffective assistance. And that decision was a result of petitioner's offering only one issue for consideration and that issue did not involve ineffective assistance. The same reasoning which underlies this Court's conclusion with respect to the previous two claims applies to this one as well. Petitioner has committed an unexcused procedural default and cannot obtain federal review of his ineffective assistance claim.

5. <u>Violation of the *Brady* Rule</u>.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the prosecution is required to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. According to petitioner, this rule was violated in his case because the prosecutor had a tacit agreement with Hamlin, the key witness, for favorable treatment with respect to the charges pending against him and because this information was withheld from the defense. Respondent counters that the issue is being raised for the first time here and that it was not exhausted in state courts. Respondent also appears to suggest that the issue lacks merit, by arguing that the record shows that Hamblin had no agreement with the prosecution for any specific testimony, beyond that which was disclosed during the trial.

The Court has reviewed petitioner's brief on appeal and cannot locate the *Brady* claim among the nineteen claims contained therein. [Addendum No. 17, Pet'r's App. Brf. at 3-5]. This constitutes a procedural default which may be surmounted by the requisite showing of cause and prejudice. No such a showing has been made and petitioner's *Brady* claim is now barred from federal review.

6. <u>*Violation of the Right to a Jury*</u>

Petitioner predicates this claim on *Blakely v. Washington*, 542 U.S. 296 (2004), arguing that he was entitled to the presumptive minimum sentence and that, without a jury finding in this regard, the sentences he received were above or at the midpoint of the sentencing range. Respondent argues that petitioner never raised properly his *Blakely* based claim in the state courts and that he is not entitled to retroactive application of *Blakely*. While petitioner challenged the length of his sentence on direct review, he did not mention *Blakely* or the Constitution, and the claim was disposed of on state law grounds. Petitioner's

22

position is that *Blakely* applies retrospectively because *Blakely* was decided on June 24, 2004, and because his case was not final on appeal until August 10, 2004.[5]

Whether *Blakely* applies retroactively to petitioner's case is simply not an issue. *Blakely* was decided before his direct appeal became final. But petitioner never offered his *Blakely* claim to the state courts for their consideration, even though he could have. An issue that could have been, but was not, presented to the state courts has been procedurally default. No cause and prejudice has been shown to overcome the default, and federal review of the claim is now foreclosed.

### C. **Insufficiently-Pled/ Non-Cognizable Claims**

1. *Evidentiary Errors at Trial*

2. *Erroneous Rulings on Appeal*

These two claims have been combined because of their similarity and because they are governed by the same legal principles. In the first claim, petitioner suggests that the state failed to establish the chain of custody with respect to the controlled substances. Respondent asserts that this claim was waived and, alternatively, that it is meritless. In the second claim, petitioner maintains that the Court of Criminal Appeals remedied an error by merging his cocaine and marijuana conspiracy convictions, whereas it should have vacated the greater offense (i.e., the conviction for the cocaine conspiracy). Respondent suggests that there is no logic or substance to back up this claim and, more important, that the claim is not founded on federal law.

At the outset, it must be noted that the trial error claim is inadequately pled because it is unsupported by any developed argument. Thus, petitioner's allegations are

---

[5]A Supreme Court decision announcing a new constitutional rule applies to a state prisoner's case which is still pending on direct review at the time the decision is issued. *Teague v. Lane*, 489 U.S. 288 (1989)

conclusory. Bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).

Moreover, the law which applies to both claims is that interpretations of state statutes and issues concerning the application of state rules of procedure or evidence are matters for state court consideration, and not the federal courts. *Estelle v. McGuire*, 502 U.S. at 67-68. However, if a state court error renders the proceeding so fundamentally unfair as to deprive petitioner of due process of law under the Fourteenth Amendment, then it becomes a matter of constitutional concern. *McAdoo v. Elo*, 346 F.3d 159, 166 (6th Cir. 2000) (*citing Estelle*, 502 U.S. at 69-70). The Court sees no such a deprivation here.

Finally, petitioner suggests, as to his claim that the appellate court erred by merging the lesser offense into the greater, that the rule of lenity requires only one punishment on the lesser offense. However, rules of statutory construction, such as the rule of lenity, "are not rules of law but are merely axioms of experience." *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952). Lenity considerations apply to interpret uncertain or ambiguous statutes, but the rule of lenity has no application to this habeas case. *See United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952) (observing that rules of statutory construction, such as the rule of lenity, "are not rules of law but are merely axioms of experience"). Petitioner cited to this case, but it cuts against his claim. *See also Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir.1984) (observing that it is "axiomatic that state courts are the final authority on state law" and that "[s]tate statutes mean what state courts say they mean").

### 3. *Illegal search*

According to petitioner, there was no probable cause in the affidavit used to support issuance of the warrant to search his residence. Respondent, claiming waiver, points

to the state court's opinion finding that petitioner's brief lacked citation to legal authority or to the record. Respondent also argues that petitioner has claimed in his federal petition that the search warrant and the supporting affidavit had other deficiencies but that these deficiencies were not presented first to the state court and, thus, were not properly exhausted.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise the claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id.*, at 494-95.

Petitioner maintains that he was deprived of a full and fair opportunity to raise his claims because the judge who presided over the evidentiary hearing was the judicial officer who issued one of the search warrants. Petitioner overlooks the fact that he waived that issue during the evidentiary hearing. [Addendum No. 16., Evid. Hrg. Tr. at 8-9]. He cannot resuscitate it in these habeas proceedings.

In addition, contrary to petitioner's assertion, a review of the record makes it clear that petitioner had the opportunity to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts. Petitioner filed motions to suppress the search warrants; an evidentiary hearing was held on the motions, during which petitioner was allowed to offer his objections to the warrants and cross-examine the officers involved; and the trial court, finding no reason to suppress, denied the motions. [Addendum No. 1 at 29-30 and 40-41; Addendum No.16, Evid. Hrg. Tr. at 53-59]. Therefore, Petitioner's claim is not reviewable

in this federal habeas corpus proceeding.

## V. **Conclusion**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In this case and for the above reasons, respondent is entitled to and will be **GRANTED** summary judgment, petitioner will be **DENIED** partial summary judgment, and this application for a writ of habeas corpus will be **DISMISSED**.

## VI. **Certificate of Appealability**

One final matter remains for discussion: whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. See 28 U.S.C. § 2253(c)(1). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that many of petitioner's claims were procedurally defaulted and that he has not made a sufficient showing of cause and prejudice to overcome this obstacle. The Court also found that the claims which were adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
